PORTLAND FLOURING-MILLS CO. v. WEIR et al.

(District Court, D. Oregon. July 28, 1899.)

SHIPPING—CONSTRUCTION OF CHARTER—COMMISSIONS.

A charter party provided for the payment of a commission on the estimated gross freight to the charterer and the brokers, half each, "on the completion of loading, or should vessel be lost." The vessel was described in the charter as "now reported as per list New York March 2nd for Shanghai." In a suit to recover the commissions it was shown that she arrived at Shanghai, discharged her cargo, and started in ballast for the designated port of loading under the charter. Held, that the commission could not be considered as merely a rebate from freight, since half of it

was payable to the brokers, and that, it being shown that the vessel was in existence when the charter was made, and that she left Shanghai in pursuance of the charter, the contract then came into operation, and her loss at sea thereafter was a loss within the terms of the charter, which rendered the owners liable for the commission.

In Admiralty. On exceptions to libel.

Williams, Wood & Linthicum, for libelant.

Snow & McCamant, for respondents.

BELLINGER, District Judge. This is an action by the Portland Flouring-Mills Company, charterers, against the owners of the British bark Laurelbank, to recover commissions under the charter party. The charter was signed May 10, 1898, and describes the Laurelbank as "now reported as per list New York March 2nd for Shanghai." The clause in the charter out of which this controversy grows is as follows: "A commission of 5 per cent. shall be paid to charterers and Taylor, Young & Co., half each, on the estimated gross freight in U. S. gold coin (at the exchange of 48 pence) on the completion of loading, or should vessel be lost." The Laurelbank arrived at Shanghai, and thereafter, and on the 31st of August, 1898, sailed in ballast for Portland, Or., and while on such voyage was lost. It is claimed, on the one hand, that such loss is within the clause of the charter which provides for commissions in case the vessel should be lost, and, on the other, that the commission provided for is not in fact a commission, but a rebate or deduction to be made from freight, and is not due upon loss of the vessel unless the loss occurs after the vessel has been placed at the charterer's disposal, and that this is not such a case. A typewritten copy of the opinion in the case of Sibson v. Ship Barcraig Co. (1896) 24 Ct. Sess. Cas. 91,—a Scotch case,—has been submitted in the defendants' behalf. That case is like the one on trial except that the agreement in that charter party was on the chartering "to arrive" of the vessel, while in this case the words "to arrive" are not in the charter party. Much importance is attached to these words in the decision of the Scotch case. Thus the finding and judgment of the sheriff substitute, who appears to have acted as judge in the first instance, was that the chartering was not "to arrive" till the vessel should be placed at the disposal of the charterers, and cited Benjamin on Sales, with reference to the sale of goods "on arrival," as throwing light on the construction to be given to the words "on chartering to arrive"; and the judges on appeal adopted this view, holding that it was "the primary condition of the charter party coming into operation 'that the ship shall arrive,'" although the final decision is not placed wholly upon the construction to be given the words "to arrive." In the high court of justice, queen's bench division, in the case of Ward v. Weir, an opposite conclusion is reached. In that case, as in this, the words "to arrive" were not in the charter party. The court, referring to the Scotch case under whose shelter the defendants tried to take refuge, says:

"Their lordships thought that the intention of the parties was that the charterers should be entitled to a rebate of the freight in respect of the amount of their commission. It was not commission, and it was not brokerage, but a rebate of freight; and, inasmuch as no freight could be earned unless the ship

arrived, they thought the arrival of the vessel a condition precedent to the obligation to pay commission under the charter party. All I can say with reference to the case is that their lordships certainly had not before them the evidence and the information that I have had by the proper concession of counsel on each side as to the course of business, and the charter party, too, differs in the important fact that it was not a charter to arrive, whatever that may mean."

This case, like the case of Ward v. Weir, is distinguished from the Scotch case by the fact, already mentioned, that the agreement is not on the chartering "to arrive" of the vessel. There is nothing to distinguish it from the English case. It was pointed out by the proctor for defendants that the charter party in the latter case described the ship chartered as "now at Philadelphia, and under charter for Japan," while the present charter describes the Laurelbank as "reported as per list New York March 2nd for Shanghai." It is true that it thus appears that only in the one case was the existence and precise whereabouts of the vessel known, but I am unable to see that this difference is a material one. If the Laurelbank had not arrived at Shanghai, it could not be known that she was in existence at the date of this contract. The most that can be said as to this is that the contract was subject to the condition that the vessel was in existence at the time. It makes no difference whether the chartered vessel is known to be in port or is en route between ports, so long as it can be ascertained that she was in existence when the contract of charter was made. It is alleged in the libel that after such contract the vessel arrived at Shanghai, "and, in pursuance of said charter, ballasted at said port, and on the 31st of August, 1898, sailed for Portland, Oregon, to load said cargo." When the vessel loaded with ballast, and proceeded on her voyage to Portland, Or., the charter contract was in operation. All this was in pursuance of the contract, and was, therefore, in compliance with it, since it was done with a view to the loading of her cargo at Portland or Astoria, Or. The contract being in operation, all its obligations attached. In the Scotch case there was no intermediary for introducing the parties. The commission was to go to the charterers only, while here the commission is to be paid to the charterers and Taylor, Young & Co., one-half to each. At least so far as Taylor, Young & Co. are concerned, the amount to be paid cannot be a deduction or rebate, or have been so intended. If it is open to question whether the parties intend a rebate of freight when they have in terms provided for a commission, at least there can be no question in a case like this, where one-half of the commission is to be paid to parties from whom no freight is payable. And, further, effect must be given to the words "or should the vessel be lost." In the Scotch case it was conceded that this phrase must refer to the loss of the vessel at some time before the completion of loading, and the construction was adopted that it runs from the time when the vessel was placed at the charterer's disposal. I am unable, under the circumstances of this case, to agree in such a construction, and prefer the construction adopted in the English case of Ward v. Weir. By the terms of the charter party, the vessel, after discharging her inward cargo or ballast, was to proceed to such loading place as might be designated by the charterers at Portland and Astoria and

loading places in the Columbia and Williamette rivers. The word "lost," when applied to a ship, is understood to mean lost at sea. This is the common acceptation of that word in that connection. It would, in my opinion, be unusual, if not unheard of, to speak of a ship under any circumstances as "lost" at her wharf, or in a river like either of these mentioned. I do not think it probable that this clause was intended to refer to such accidents as might befall the ship after her arrival in this port, but that it relates back to the time of sailing from Shanghai in pursuance of the charter, from which time, as already stated, the charter party was in operation. The exceptions to the libel are overruled.